KATHRYN McKOWN *v.* CRISER'S SALES AND
SERVICE ET AL.

[No. 801, September Term, 1980.]

*Decided June 3, 1981.*

The cause was argued before GILBERT, C. J., and THOMPSON
and WEANT, JJ.

*Paul G. Evans,* for appellant.

*Theodore B. Oshrine,* with whom were *Donald C. Allen* and *Allen, Thieblot & Alexander* on the brief, for appellee Criser's Sales and Service.

THOMPSON, J., delivered the opinion of the Court.

The principal issue before us is whether, under the Maryland long-arm statute, and consistent with the Due Process Clause of the Fourteenth Amendment, a Maryland court may exercise personal jurisdiction over the appellee, a Virginia car dealer who sold a vehicle to a Maryland resident, in an action brought by a Maryland resident to recover for injuries allegedly caused in Maryland by defects in that vehicle. The Circuit Court for Baltimore County held that no basis existed for the assertion of personal jurisdiction and dismissed the action as to the appellee. We agree that jurisdiction is lacking and affirm.

In 1975, the appellant, Kathryn McKown, was injured when the vehicle in which she was riding, a 1972 jeep stationwagon owned by Katherine Marshall Washburne and driven by her son, Richard Janney Washburne, ran off the road, overturned twice, and caught fire. The vehicle had been purchased new in 1971 by Mrs. Washburne, a Maryland resident, from the appellee, Clarence C. Criser, t/a Criser's Sales and Service (Criser), at Criser's place of business in Hot Springs, Virginia. The purchase price of the jeep was $5,642.00. At the time of the accident, McKown was a resident of Maryland; the accident occurred on a highway in Maryland.

McKown subsequently filed a negligence and products liability action in the Circuit Court for Baltimore County against Criser and others, alleging that the jeep had been sold in a dangerously defective condition, that Criser had been negligent in selling the vehicle and in failing to discover and correct the defects, and that the defects had, at least in part, caused her injuries.[1] Criser responded by filing

---

1. The alleged defects involved (1) the vehicle's fuel system, which leaked fuel and which exploded in the accident, (2) the material used in the vehicle's interior, which was alleged to be excessively flammable, and (3)

a motion raising preliminary objection, pursuant to Md. Rule 323, in which he contended that the Maryland court lacked jurisdiction over his person. Along with his motion, he filed an affidavit which stated, in pertinent part, that Criser:

"[M]aintains its principal place of business in . . . Virginia, and does not sell any motor vehicle or any other goods in . . . Maryland[;] . . . does not nor has it ever done or solicited business in . . . Maryland nor does it or has it ever engaged in any course of conduct in . . . Maryland[;] . . . does not nor has it ever maintained any office . . . [or] . . . personal property in Maryland, and does not nor has it ever had any . . . employees living and/or working in Maryland[;] . . . does not nor has it ever derived any substantial revenue from goods, services, or manufactured products used or consumed in . . . Maryland. On very infrequent occasions, a resident of Maryland purchases a vehicle from [Criser]. If this occurs, as it did with the Washburne vehicle [Criser] . . . prepares the appropriate form so that the vehicle can be registered in Maryland. However, [Criser] . . . never solicits such business, never advertises in Maryland, but merely sells a vehicle to a purchaser who, on very infrequent occasions happens fortuitously to be a resident of Maryland."

At the hearing on Criser's motion, held on January 2, 1979, before Judge Paul E. Alpert, this affidavit was the only evidence presented by either side. On April 24, 1979, Judge

---

the doors and windows, which became inoperable in the accident, trapping McKown for a time in the burning car. Also named as defendants were the jeep's driver, who allegedly fell asleep at the wheel, the owner, who allegedly had knowledge of the defective fuel tank and failed to have it repaired, the owner's husband, who, "as agent" for the owner, was allegedly negligent in his attempts to have the tank repaired, the manufacturer, who produced the defective vehicle, the distributor, who sold the defective vehicle to Criser, and three establishments which serviced the jeep's fuel system prior to the accident and failed to remedy the defect. McKown's action is still pending against these additional defendants; they are not involved in this appeal.

Alpert granted the motion raising preliminary objection and ordered that judgment for costs be entered in Criser's favor. The order did not contain an express determination that there was no just reason for delay in entering judgment. On February 11, 1980, McKown filed an application to stay execution of Judge Alpert's order, under Md. Rule 1019. Criser responded with a motion *ne recipiatur,* pursuant to Md. Rule 322. On June 2, 1980, a hearing was held before Judge Buchanan, who, on that same day, signed an order which stated that, having considered the motion raising preliminary objection, the motion *ne recipiatur,* and the arguments of counsel, he found there to be no just reason for delay in the entry of judgment and directed the entry of judgment for costs in favor of Criser. This appeal followed.

McKown argues that Criser is subject to the jurisdiction of the courts of this state under the Maryland long-arm statute, Md. Cts. and Jud. Proc. Code Ann. § 6-103, and that the court below therefore erred in dismissing the action as to Criser. Application of the long-arm statute involves a two step process. First, it must be determined whether the language of the statute authorizes jurisdiction; second, because the Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant, *Kulko v. Superior Court,* 436 U.S. 84, 91, 98 S. Ct. 1690, 56 L. Ed. 2d 132 (1978), it must be determined whether the exercise of jurisdiction, if authorized by the statute, would be consistent with Fourteenth Amendment Due Process. *See, Mohamed v. Michael,* 279 Md. 653, 657, 370 A.2d 551 (1977); *Geelhoed v. Jensen,* 277 Md. 220, 224, 352 A.2d 818 (1976). The two determinations are inter-related "as it was the intent of the Legislature in enacting the long-arm statute to expand the personal jurisdiction of the courts to the extent permitted by the Fourteenth Amendment," *Mohamed v. Michael,* 279 Md. at 657, and thus "the reach of the statute will largely depend upon whether Maryland *in personam* jurisdiction may be asserted under the Fourteenth Amendment." *Krashes v. White,* 275 Md. 549, 559, 341 A.2d 798 (1975).

McKown asserts that jurisdiction is present under § 6-103 (b) (4),[2] which authorizes the exercise of personal jurisdiction over one who:

> "Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State."

She claims that Criser caused tortious injury in Maryland by an act or omission outside of Maryland, i.e., the injuries she allegedly suffered in Maryland as a result of Criser's negligence in inspecting and selling the jeep in Virginia, and that Criser derived substantial revenue from goods or manufactured products used in Maryland. Criser obviously derived some revenue from goods or products used in Maryland; he was paid $5,642 for the Washburne jeep, which was used in Maryland, and it may be assumed that the other vehicles he admittedly sold to Maryland residents were used

---

2. McKown also contends that jurisdiction exists under Section 6-103 (b) (2) and (b) (6). These contentions may be disposed of summarily. Subsection (b) (2) authorizes jurisdiction over persons who contract to supply goods, services or manufactured products "in the State." Criser contracted with Washburne to supply a new vehicle at his place of business in Virginia and perhaps to supply, again at his place of business, the documents required to permit Washburne to register the vehicle in Maryland; so far as the record discloses, Criser did not contract to supply anything in the State of Maryland. Therefore, subsection (b) (2) is not applicable. Subsection (b) (6) "is a specialized subsection relating to insurer and surety relationships," McLaughlin v. Copeland, 435 F. Supp. 513, 529 (D. Md. 1977), and was intended to apply only to insurance contracts. See, Auerbach, "Long-Arm" Comes to Maryland, 26 Md. L. Rev. 13, 45-46 (1966); Uniform Interstate and International Procedure Act (U.L.A. § 1.03), Commissioners' Comment. The apparent basis for McKown's claim that jurisdiction over Criser is authorized under (b) (6) is the "warranty" allegedly given by Criser; it cannot be determined from either the declaration or the brief whether she is referring to an implied warranty of fitness or merchantability under the Uniform Commercial Code, see, e.g., Md. Comm. Law Code Ann. §§ 2-314 and 2-315, or to the limited time-mileage warranty covering various components of the vehicle, which typically is given by the manufacturer of a new car. Regardless of which is intended, it is clear that she has not alleged that Criser had any connection with any contract of insurance and therefore subsection (b) (6) is not a basis for jurisdiction in this case.

in Maryland as well and that he derived additional revenue from their sale. The critical inquiry then is whether the revenue derived by Criser from vehicles used in Maryland is "substantial." Inasmuch as the purpose of the long-arm statute is to extend the jurisdiction of the Maryland courts to the limits of the Constitution, the term necessarily takes its meaning from the requirements of due process, i.e., "substantial revenue" is that amount of revenue which gives the defendant the required "minimum contacts" [3] with the forum state. *See, Geelhoed v. Jensen,* 277 Md. at 226-27.

Significant guidance in this area is found in the recent decision of the U.S. Supreme Court in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980), where the Court addressed the question of

> "[W]hether, consistently with the Due Process Clause of the Fourteenth Amendment, an Oklahoma court may exercise *in personam* jurisdiction over a nonresident automobile retailer and its wholesale distributor in a products-liability action, when the defendants' only connection with Oklahoma is the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma." *Id.* at 287.

In that case, New York residents purchased a new car from a New York dealer; the car had been distributed to the dealer by a regional distributor which served the states of New York, New Jersey, and Connecticut. A year later, while they were traveling through Oklahoma on their way to their new home in Arizona, the purchasers were involved in an accident and seriously injured. They subsequently brought suit in Oklahoma against the dealer and the distributor, among others, alleging the car had been defectively designed

---

**3.** In International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945), the Supreme Court stated: "[D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

and manufactured. The Oklahoma Supreme Court held that the exercise of jurisdiction over the defendants, under a provision of the Oklahoma long-arm statute which was, in pertinent part, identical to subsection (b) (4) of the Maryland statute, was proper; the Court reasoned that, due to the mobile nature of automobiles, it was foreseeable that vehicles sold in New York would be used in Oklahoma, that vehicles sold by the defendants obviously were used in Oklahoma, and that, given the value of the automobile, it was reasonable to infer that the defendants derived substantial revenue from cars which were, from time to time, used in Oklahoma.

The U.S. Supreme Court held that the exercise of jurisdiction over the defendants by the Oklahoma courts violated due process and reversed. Reaffirming the principle that a state may exercise personal jurisdiction over a nonresident defendant only when there exists "minimum contacts" between the defendant and the forum state, the court stated:

> "[W]e find in the record before us a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction. Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market. In short, respondents seek to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom: The fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma." *Id.* at 295.

The Court distinguished these circumstances from those where "sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States . . ."; under the latter circumstances, the Court wrote:

"[I]t is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 297-98.

The Court also rejected the argument that, because the automobile is by its very nature mobile, it was foreseeable that the cars sold in New York would enter Oklahoma and cause injury there, stating:

"But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297.

*See also, Granite States Volkswagen, Inc. v. District Court,* 492 P.2d 624 (Colo. 1972); *Tilley v. Keller Truck & Implement Corp.,* 438 P.2d 128 (Kan. 1968); *Pellegrini v. Sachs & Sons,* 522 P.2d 704 (Utah 1974); *Oliver v. American Motors Corp.,* 425 P.2d 647 (Wash. 1967). (All holding that jurisdiction may not be exercised over a nonresident car dealer, where only connection between dealer and the forum state was the occurrence of the injury and the foreseeability that the vehicle in question would be used in the forum state).

Finally, while not directly addressing the question of what constitutes "substantial revenue," under the Oklahoma long-arm statute, the Supreme Court rejected the Oklahoma court's reasoning that, because one vehicle sold by the defendants had been used in Oklahoma, others might have been used there as well, and that the defendants derived substantial revenue from those vehicles. The Court said:

"[F]inancial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State. [citation omitted]. In our view, whatever marginal revenues petitioners may receive by virtue of the fact that their products are capable of use in Oklahoma is far too attenuated a contact to justify that State's exercise of *in personam* jurisdiction over them." *Id.* at 299.

The burden of alleging and proving the existence of a factual basis for the exercise of personal jurisdiction, once the issue has been raised, is upon the plaintiffs. *Quinn v. Bowmar Publishing Co.,* 445 F. Supp. 780, 786 (D. Md. 1978); *United Merchants and Manufacturers, Inc. v. David & Dash, Inc.,* 439 F. Supp. 1078, 1081 (D. Md. 1977). In the instant case McKown produced no evidence whatsoever to support her contention that Criser was subject to the jurisdiction of the Maryland courts; the only evidence before the court below was that contained in the affidavit which Criser submitted in support of his motion raising preliminary objection. That evidence showed that Criser had the following contacts with Maryland, the forum state: on one occasion, more than three years prior to the accident, he sold one vehicle to a Maryland resident, at his place of business in Virginia, for $5,642, knowing that that vehicle would be used in Maryland; in addition, he sold, "on very infrequent occasions," an unspecified number of other vehicles at unspecified times to unidentified Maryland residents, for unspecified prices. As in *World-Wide Volkswagen,* there was no evidence that Criser carried on any activity of any kind

in Maryland, that he availed himself of any of the privileges or benefits of Maryland law, that he closed any sales or performed any services in this state, that he solicited any business or advertised in Maryland, or that he regularly sold cars to Maryland customers. Clearly, Criser's contacts with Maryland are somewhat more extensive than were those of the *World-Wide Volkswagen* defendants with Oklahoma; it cannot, for instance, be said here, as it was in *World-Wide Volkswagen,* that there is no evidence that any vehicle sold by the defendants, other than the one involved in the litigation, had ever entered the forum state. However, we do not believe that the limited additional contacts present here are sufficient to satisfy due process. We note that, had evidence been adduced to supply some of the missing details of Criser's "very infrequent" sales to Maryland residents, e.g., had it been shown that Criser had made a significant number of sales to Maryland residents over a relatively short period of time, *cf., Hardy v. Rekab, Inc.,* 266 F. Supp. 508 (D. Md. 1967) (five sales of amusement park rides in Maryland over six-year period, coupled with delivery in Maryland on two occasions, and one trip by representative to Maryland to supervise installation, held sufficient to establish jurisdiction over Oregon manufacturer under subsection (b) (4) and to satisfy due process), or that a significant percentage of his total annual sales were to Maryland residents, *cf., United Merchants and Manufacturers, Inc. v. David & Dash, Inc.,* 439 F. Supp. at 1084-85 ($30,000, representing one-half of one percent of defendant's total annual sales, held "substantial revenue") and cases cited therein; *cf. also, Egeria Societa di Navigazione Per Az. v. Orinoco Mining Co.,* 360 F. Supp. 997 (D. Md. 1973), we would likely have reached a different result. Nevertheless, on this record we cannot say that Criser has made efforts to serve the market for its products in Maryland, or that his sales to Maryland residents were other than isolated occurrences. His conduct and connection with Maryland are not such that he should reasonably have anticipated being haled into court here. *Cf., Lewron Television, Inc. v. International Alliance,* 37 Md. App. 662,

673, 378 A.2d 728 (1977) (no jurisdiction over association under subsection (b) (4) where only a small percentage of its members were Maryland residents and where its activities in Maryland were limited to participation in collective bargaining talks on rare occasions). *But cf., Bodine's Inc. v. Sunny-O, Inc.,* 494 F. Supp. 1279 (N.D. Ill. 1980). Criser was not shown to derive substantial revenue from goods or products used in Maryland and therefore jurisdiction cannot be exercised over him, consistent with Fourteenth Amendment due process.[4]

McKown also raises several procedural objections to the judgment entered by the court below in Criser's favor:

(1) McKown's first contention is that "Judge Alpert's determination of April 24, 1979, was not a judgment and did not dismiss the claim against Criser or any other defendant." Judge Alpert's order did not contain an express determination that there was no just reason for delay in the entry of judgment, pursuant to Md. Rule 605 a, and therefore was an interlocutory, as opposed to a final, judgment. As such, it did not dismiss the claim against Criser or any other defendant. Having agreed with McKown's observation, we are at a loss to determine what significance it has.

(2) McKown's second contention is that "Judge Buchanan was without jurisdiction to enter judgment for Criser by reason that the law of the case and the lack of a discreet application prevented him from doing so." To the limited extent to which this argument is comprehensible, it appears that it is McKown's contention that it was improper for a judge other than Judge Alpert to enter judgment for Criser. The complaint is without merit. McKown's motion for a stay and Criser's motion *ne recipiatur* were properly presented to the motions judge for the Circuit Court for Baltimore County, Judge Buchanan. The interlocutory judgment entered by Judge Alpert was, under Md. Rule 605 a, subject to revision at any time by any judge having jurisdiction over the matter. Judge Buchanan had such jurisdiction and there

---

4. As Hot Springs, Virginia is approximately 200 miles from the Maryland border, it is unlikely that Criser's Maryland sales are significant.

was nothing improper in his directing that final judgment be entered.

(3) McKown's third argument is that "the action of the trial courts in granting judgment to Criser without an evidentiary hearing also violates procedural due process." Again, McKown's contention is without merit. A hearing was held on January 2, 1979, before Judge Alpert, on Criser's motion raising preliminary objection. Thereafter, on June 2, 1980, a hearing was held before Judge Buchanan on Criser's motion *ne recipiatur.* There is nothing to indicate that McKown was prevented at either of these hearings from presenting any evidence she wished to support her claim that the exercise of jurisdiction over Criser was proper.

(4) McKown's fourth contention is that "Rule 605 requires that the trial judge state his reasons for granting judgment to some but not all the defendants and why there was no just reason for delay in entering judgment." Md. Rule 605 a provides as follows:

> "Where more than one claim for relief is presented in an action, whether as an original claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."

Although it is apparently required under federal practice that the court set forth its reasons for so doing when it enters a partial, final judgment, *see, Vazquez v. Ferre,* 410 F. Supp. 1385, 1386 (D. N.J. 1976), this requirement is not stated in

the Maryland Rule and we have been referred to no Maryland authority which imposes such a requirement. We see no reason to impose such a requirement under the facts of this case. Compare Md. Rules 18 b and 564 b 2.

(5) The appellant has inartfully argued throughout the brief that the trial judge erred in entering a final judgment because she needed discovery from Criser in order to be able to prove her case against the other defendants. Although two cases, *Hunt v. Mobil Oil Corp.,* 550 F.2d 68 (2d Cir.), *cert. denied,* 434 U.S. 984 (1977) and *Vazquez v. Ferre, supra,* indicate that a need for discovery was a proper consideration in deciding whether or not to make an interlocutory judgment final, neither of them indicated that it should be controlling. We certainly could not hold that the trial judge abused his discretion in deciding that that issue was not controlling as applied to a defendant who was not subject to suit in this state. Under the Md. Rules, discovery can be obtained from nonresident nonparties as well as from nonresident parties. See, Md. Rule 408; Md. Rule 425. We note that after the appeal was filed, the appellant filed and obtained an order from the Circuit Court for Baltimore County to permit the taking of Criser's employees' depositions in the State of Virginia on not less than twenty days' notice of the time and place.

*Judgment affirmed.*
*Appellant to pay the costs.*