# RICHARD W. FELDMAN *v.* MAGNETIX CORPORATION, ETC.

[No. 399, September Term, 1981.]

*Decided December 7, 1981.*

The cause was argued before MOYLAN, MOORE and BISHOP, JJ.

*William N. Fitzpatrick, Jr.,* with whom was *Benjamin Rosenberg* on the brief, for appellant.

*Thomas K. Baxter,* with whom was *David J. Preller, Sr.,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

Article IV, Section 1 of the Constitution of the United States provides:

> "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

The ultimate issue before us on this appeal is whether Maryland shall extend full faith and credit to a judgment entered by a court in the State of Florida.

The appellant, Richard W. Feldman, is a resident of Maryland. The appellee, Magnetix Corporation, is a Florida corporation in the business of, *inter alia,* duplicating magnetic tapes from original tapes. Pursuant to an oral agreement between them starting in 1973, Feldman would send tapes from his place of business in Maryland to Magnetix in Florida, where the tapes would be reproduced and then returned to Feldman in Maryland. In June, 1975, Magnetix received an order from Feldman, performed the reproduction services requested, shipped the completed tapes to Feldman in Maryland and billed him for the services in the amount of $2,036.90. Feldman failed to make payment.

Magnetix brought suit against Feldman in the County Court for Orange County, Florida. It obtained service upon Feldman, in compliance with the Florida "Long Arm" Statute, by having a copy of the complaint served upon Feldman's wife at Feldman's residence in Maryland.[1] Feldman failed to answer the complaint and failed to appear

---

1. The appellant does not challenge the method of service. Indeed, Sections 48.031 and 48.194 of the Florida Statutes Annotated (1973, Supp. 1981), authorize such service on a family member.

in Florida. On September 28, 1978, a final judgment was rendered against him by the Florida court in the amount of $2,036.90 in damages and $90.20 in court costs.

Magnetix subsequently sued Feldman in the District Court of Maryland for Baltimore County, seeking to have the Florida judgment enforced. Feldman elected a jury trial and the case was transferred to the Circuit Court for Baltimore County. Based on certified copies of the records from Florida, Magnetix moved for summary judgment. On February 6, 1981, Judge Austin W. Brizendine conducted a hearing on Magnetix's motion for summary judgment (and a cross-motion for summary judgment by Feldman) and granted the motion on behalf of Magnetix (denying the cross-motion of Feldman).

Upon this timely appeal, Feldman raises two related issues. He claims that "there is a genuine issue of material fact respecting the Defendant's liability. The debt sued upon was a corporate debt of Communitape Corporation, and the Defendant was not and is not personally liable for the said debt." Our response to that claim is that, if the Florida judgment is entitled to full faith and credit in Maryland, the factual dispute as to liability, however genuine, is not material. The materiality of that dispute ended with the handing down of the judgment in Florida; under principles of *res judicata,* the dispute may still be very genuine but is utterly immaterial. Feldman's oblique attempt to resuscitate materiality by relating the factual dispute to the jurisdictional issue rather than to the liability issue is foreclosed by *Groom v. Margulies,* 257 Md. 691, 265 A.2d 249. The well-reasoned decision of Judge Barnes dealt with a similar contention. Margulies there challenged the jurisdiction of the State of Maryland, under our "Long Arm" Statute, on the grounds that he had not done business personally in Maryland but had only acted for a corporation which did business in Maryland. The Court of Appeals pointed out that the contention went to the merits of the case and not to the question of jurisdiction. It reasoned, at 257 Md. 703-704:

"In considering problems arising under the Long Arm Statute, it is important to distinguish between the *jurisdiction* of the forum state over the out-of-state defendant, on the one hand, and the *merits* of the case, on the other. The defendant Margulies contends, in effect, that inasmuch as he was acting in Maryland as an agent for a disclosed principal, he was not transacting any business in Maryland for himself as an individual, but only for his principal and hence the lower court had no jurisdiction over him under the 'Long Arm' Statute. We do not agree with this contention. The declaration in the present case, the itemized statement of account and the affidavit in support of Groom's motion for summary judgment indicate on their face that the agreement was entered into in Maryland with Margulies individually even though he was trading as Marko Distributors, Inc.; that Groom dealt with Margulies 'exclusively' and paid the $10,000.00 to him. The service by mail was sent to Margulies in New Jersey and he signed the return receipt without qualification. There is really no contention that the negotiation of the agreement and lease, the execution of these documents in Maryland and the payments in Maryland do not amount to the transaction of *any* business in this State. Cf. *Vitro Electronics v. Milgray,* 255 Md. 498, 258 A.2d 749 (1969). The contention is that the 'transaction of business' was not for Margulies individually but for a corporation, which Margulies contends was a disclosed principal. This contention, however, in our opinion is directed at the question of ultimate *liability* in the case. The statute makes the test of jurisdiction in the *present* circumstances, the transaction of *any* business without any qualification. Margulies did transact business in Maryland and Maryland has personal jurisdiction over him. His *defense* that *he is not liable* because he was acting for a disclosed corporate principal

goes to the *merits* of the case, not to the *power* of the court to make the adjudication." [2]

The mootness of any factual dispute as to the merits of liability, however, does not render immaterial a genuine dispute as to other facts bearing upon the State of Florida's *in personam* jurisdiction over the appellant Feldman. As Judge Oppenheimer expertly traced for the Court of Appeals in *Van Wagenberg v. Van Wagenberg,* 241 Md. 154, 215 A.2d 812, a party proceeded against under an out-of-state judgment may collaterally attack the jurisdiction of the court which rendered that judgment. "[I]f there was no jurisdiction, the judgment is not entitled to faith and credit." 241 Md. at 160. As Judge Oppenheimer pointed out at 241 Md. 161:

> "If the court of the state rendering the judgment sued upon was not authorized by that state to exercise its jurisdiction in the particular matter, the purported judgment is subject to collateral attack. The power of the state (Maryland) in which the suit on the judgment of the sister state (New York) is brought, to examine into whether, under New York law, the court of that state which rendered the judgment had authority to do so, is beyond question."

In defending against summary judgment in this case,

---

**2.** Let it be carefully noted, however, that the rule of law expressed by Groom v. Margulies, and fully applicable to the situation at bar, should not be read overbroadly to subject any agent of any corporation under any circumstances to the jurisdiction of the forum state simply because the corporation itself is so subject. The rule of law expressed in Groom v. Margulies covers the situation such as the one before us wherein the individual and the corporation are, in effect, alter egos. In this case, Feldman was from the moment of the corporation's birth its president and principal shareholder. He devoted all of his professional effort to the business of the corporation. All of the contacts which the corporation had with Magnetix in Florida were contacts made by Feldman in person. Nothing in Groom v. Margulies and nothing in this present holding, therefore, intimate anything with respect to a forum state's "Long Arm" *in personam* jurisdiction over an individual who is, as an agent, just one small cog in the machinery under a large and multi-faceted corporate entity. For such a situation, see Quinn v. Bowmar Publishing Co., 445 F.Supp. 780, 786 (D. Md. 1978). Compare Holfield v. Power Chemical Co., Inc., 382 F.Supp. 388 (D. Md. 1974). See also generally 4 Wright and Miller, *Federal Practice and Procedure,* § 1069 (1980 Supp. at 46).

Feldman mounted such an attack against the *in personam* jurisdiction of the Florida court in two regards: (1) that the exercise of jurisdiction by Florida violated Florida law and (2) that the exercise of jurisdiction by Florida violated the due process clause of the Fourteenth Amendment to the United States Constitution.

Under Maryland Rule 610d 1, summary judgment is appropriate where "the pleadings, depositions and admissions on file, together with the affidavits, if any, show there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." From the pleadings and the answers to interrogatories in this case, there is some genuine factual dispute between Feldman and Magnetix over the extent to which their business transactions and negotiations implicated the State of Florida. If the difference between their versions of the facts would be pivotal in determining Florida's jurisdiction over Feldman either under the Florida statutes or under the Federal Constitution, the dispute would be material and summary judgment would be inappropriate. The normal processes of fact-finding, by judge or jury, with the opportunity to condition for trustworthiness, to probe through cross-examination, to observe witnesses' demeanors, would then be resorted to for purposes of assessing competing credibilities, weighing contradictory evidence and resolving such genuine factual disputes on material issues.

In reviewing a summary judgment, we must consider the facts, and all legitimate inferences flowing therefrom, in the light most favorable to the party opposing the motion. *Berkey v. Delia,* 287 Md. 302, 413 A.2d 170; *Lawless v. Merrick,* 227 Md. 65, 175 A.2d 27. In this case, we shall affirm the actions of Judge Brizendine for we conclude, as a matter of law, that even the version of the facts submitted by Feldman and most favorable to him demonstrates that Florida had jurisdiction over him, both under Florida law and without violation of any due process protection.

Two of the affidavits of Feldman himself reveal that from 1971 through 1975, he was the president and principal shareholder of the Communitape Corporation.

Communitape was in the business of producing audio-visual programs. During all of that period, Mr. Feldman devoted all of his professional efforts to the business of Communitape. On several occasions from 1973 through July, 1975, Communitape, through Mr. Feldman, did business with Magnetix. On each occasion, a master tape was shipped from Communitape in Maryland to Magnetix in Florida. In Florida, it was duplicated in the quantities specified by Feldman. The product would then be shipped from Florida back to Communitape in Maryland. Payment would be remitted to Magnetix in Florida.

The oral contract in issue was entered into between Feldman and a representative of Magnetix in about May, 1975, in Columbia, Maryland. Pursuant to that contract, the master tape was shipped from Maryland to Florida. Mr. Feldman acknowledged the possibility that he or his agents may have made "one or two telephone calls from Maryland to Magnetix Corporation's Florida offices regarding this transaction."

Feldman did not dispute the fact that normally, following delivery of an order, payment was remitted to Magnetix in Florida and that no payment was made on this final occasion.

Section 48.193 (1) (g) of the Florida Statutes Annotated (1973, Supp. 1981) provides:

> "(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:
>
> . . .
>
> (g) Breaches a contract in this state by failing to perform acts required by the contract to be performed in this state."

We, of course, defer to the Florida case law interpreting and applying the Florida statute. Three decisions of the Florida Court of Appeals have held that the failure to make payment in Florida by a non-resident debtor is a sufficient action to represent a breach of contract in Florida "by failing to perform acts required by the contract to be performed in this state" and to bring the defaulting debtor within the coverage of Section 48.193 (1) (g). In *Madax International Corporation v. Delcher Intercontinental Moving Services, Inc.*, 342 So.2d 1082 (Fla. App. 1977), the defendant was an Oregon corporation which did business in Europe and which sent a telex from Germany to the Florida plaintiff, a furniture moving company, requesting that the plaintiff transport furniture of one of the Oregon corporation's employees from Florida to Belgium. The plaintiff performed the services and billed the defendant. The defendant refused to pay. The defendant was served under the Florida "Long Arm" Statute. The Florida Court of Appeals held, at 342 So.2d 1084:

> "Accepting the facts stated above to be true, the parties entered into a contract which had been breached by Madax's (Defendant) failure to perform acts required by the contract to be performed in this state, to wit: the payment for the services rendered by Delcher. Where there is an express promise to pay and no place of payment is stipulated, the debtor must seek the creditor, and the cause of action accrues where the default occurred."

In *Professional Patient Transportation, Inc. v. Fink*, 365 So.2d 209 (Fla. App. 1978), the Court of Appeals reaffirmed its *Madax* decision and applied it in a situation where the services to be performed by the Florida plaintiff were outside the State of Florida. Payment, however, was due in Florida and payment was not made. This was held to be a sufficient breach of contract to bring the defendant within the jurisdiction of the Florida court. In *First National Bank of Kissimmee v. Dunham*, 342 So.2d 1021 (Fla. App. 1977), it was held that the failure on the part of a resident of Indiana

to pay a promissory note to a Florida bank brought the Indiana defendant within the jurisdiction of the Florida court. Since the place of payment was not specified, the note was payable at the residence of the creditor.

We also have no difficulty in holding that Florida's exercise of *in personam* jurisdiction over the appellant in this case did not deny the appellant that due process of law guaranteed him by the Federal Fourteenth Amendment. The modern Constitutional law with respect to the due process implications of a state court's rendering a judgment against an absent defendant is well-stated by *International Shoe Company v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945):

> "... due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

More recently, *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), discussed the long-range trend and evolving state of the law in this regard, saying at 355 U.S. 222-223:

> "Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for

a party sued to defend himself in a State where he engages in economic activity."

In the *McGee* case, a resident of California entered into an insurance contract by mail with an insurance company in Texas. Premium payments were regularly made by mail from California to Texas. Payment was ultimately due to a California beneficiary in California and the Texas-based company refused to make payment. In upholding California's exercise of *in personam* jurisdiction over the defendant, the Supreme Court reasoned, at 355 U.S. 223:

"It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum — thus in effect making the company judgment proof."

We find the *McGee* case far more apposite to the issue at hand than the case of *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In that case, the Supreme Court held that there was a fatal deficiency of those "minimal contacts" necessary to sustain the exercise of *in personam* jurisdiction over a non-resident. Florida was the forum state. The trust was created in the State of Delaware by a resident of Pennsylvania. The trust had no connection with Florida and nothing under the trust was ever done in Florida. The only connection Florida had with the trust was that the settlor, years later, moved to Florida. This failed to satisfy the "minimal contacts" standard. We find this inapposite to the present situation where the appellant shipped a product to Florida, the duplication process was carried out in Florida and payment for the services was due in Florida. Nor is the situation now before us remotely

analogous to that before the Supreme Court of the United States in *World-Wide Volkswagen Corporation v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In that case, the Supreme Court held that the forum state, Oklahoma, lacked the necessary "minimal contacts" to extend *in personam* jurisdiction over a New York-based automobile dealership, where an automobile was sold in New York to New York residents and the automobile was later simply being driven through Oklahoma when the accident occurred that gave rise to the products liability suit. See also *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Kulko v. California Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Rush v. Savchuk,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); Annotation, *Comment Note — "Minimum Contacts" Requirement of Fourteenth Amendment's Due Process Clause (Rule of International Shoe Co. v. Washington) for State Court's Assertion of Jurisdiction Over Nonresident Defendant,* 62 L.Ed.2d 853 (1980); and see generally Hazard, *A General Theory of State-Court Jurisdiction,* 1965 Sup.Ct. Rev. 241. Judge Thompson has well analyzed this body of law for this Court in *McKown v. Criser's Sales & Service,* 48 Md. App. 739.

We hold, as a matter of law, that Florida's exercise of *in personam* jurisdiction over the appellant was proper both under Florida law and under the Federal Constitution. Judge Brizendine was, therefore, correct in concluding that there was no genuine dispute as to any material fact so as to forestall the granting of summary judgment in this case.

*Judgment affirmed; costs to be paid by appellant.*