GEORGE UMANS ET AL. v. PWP SERVICES, INC. ET AL.

[No. 162, September Term, 1981.]

*Decided January 7, 1982.*

The cause was argued before THOMPSON, MOORE and LISS, JJ.

*Henry E. Weil,* with whom were *Belli, Weil & Jacobs* on the brief, for appellants.

*James Robert Miller,* with whom were *Miller & Steinberg* on the brief, for appellee PWP Services, Inc. *John A. King,* with whom was *Patrick J. Attridge* on the brief, for appellee Paul Moss.

THOMPSON, J., delivered the opinion of the Court.

Parents Without Partners, Inc. (PWP), is a nonprofit corporation with membership limited to single parents. It provides programs and recreational activities geared to cope with the single parent home. George Umans, one of the appellants,[1] became a member of PWP in 1964 and immediately became active within the organization. Soon thereafter he was elected president of the local chapter and later became a member of the local Board of Directors. In 1966, as the result of his experience in the field of insurance, Umans undertook to develop an insurance program for the members. The program was established and Umans served as manager and coordinator from 1966 to 1977. Prior to 1976 Umans had voluntarily contributed 5% of the gross premiums to PWP as an administrative allowance. In 1976, Umans proposed to establish a jointly owned insurance agency with PWP. This proposal by Umans culminated in an agreement on October 5, 1977, which is the basis of this suit. By its terms, Umans was to be employed by PWP Plan Administrator, Inc. (Administrator), and was to operate the insurance program through PWP Services, Inc. (Services) a corporation for profit, solely owned by PWP. Umans and the Administrator assumed the duties described in the contract on November 1, 1977 and continued to manage the insurance program in a manner similar to that exercised prior to the execution of the contract.

Services was to be a profit making organization and would receive 5% of all gross premiums of insurance written by appellants, primarily for furnishing the computer list of members of PWP, so that insurance solicitations and other ministrations could be supplied. Appellants had the obligation under this contract to use their best efforts to procure and sell low cost and effective insurance programs of every type to the members of PWP. For their efforts it was agreed that they would receive all profit from the sale of insurance to PWP members, except for 5% of the gross premiums which was to be retained by Services. The Administrator had a

1. The appellants in the present case consist of George Umans and his corporation, PWP Plan Administrator, Inc.

duty to provide a quarterly accounting to Services; detailing the number of insurance plans, policies or coverages sold to the members of PWP, their regional councils and chapters, and of all monies received as a result of the sales. The quarterly reports were to ensure that Services would be aware of the fees to which they were entitled.

Appellants had a further duty to submit to Services an annual certified accounting showing all business conducted, policies sold and ministration fees due to Services. The parties agreed that the first quarterly accounting required by the contract of October 5, 1977 would be made on January 30, 1978, as the effective date of the contract was November 1, 1977. It was further agreed that quarterly accountings would be due every three months thereafter. Failure to comply with these or any other terms of the contract was expressly stated to justify a termination of the agreement.

January 30, 1978 came and went and no quarterly statement was provided by appellant or his corporation. The officers and directors of Services began to inquire as to its absence because they were unable to determine the monies to which they were entitled. Finally, on June 15, 1978 appellant submitted a hand-written interim report which purported to cover the period from November 1, 1977 to June 15, 1978. Subsequently, a modified report was submitted for the period from November 1, 1977 through June 30, 1978. Finally, in 1978, a third report was submitted by appellant, which purported to cover the period from November 1, 1977 to June 30, 1978 and which differed from the first two reports appellant submitted, insofar as profits and amounts due to Services were concerned. The first report showed gross premiums of approximately $258,000. The second report showed gross premiums of approximately $236,000 and the third report showed gross premiums of approximately $284,000.

Appellant agreed to employ Mr. James LaGrone, the certified public accountant for PWP, to prepare the annual audit due on June 30, 1978. In August of 1978, Mr. LaGrone, together with Jeffrey Taxey, another certified public

accountant employed by him, went to the office of appellant to make the annual report. After an examination of the books and records, Mr. LaGrone and his employee concluded that the bookkeeping and records maintained by appellant made it impossible to make an accurate certified accounting as required by the contract.

After receiving this report from Mr. LaGrone, the Board of Directors of Services met with the appellant in September 1978 to afford him an opportunity to explain the accounting problems existing in his operation of the insurance program. At this meeting appellant admitted that things were "messed up," as a result of bookkeeping problems, but added that hopefully he could get things straightened out. Mr. Paul Moss, one of the appellees, who was the treasurer of Services, agreed to go to appellant's office to try to straighten out his books and records and to determine how much money, if any, was due and owing Services. Mr. Moss spent all day Saturday and Sunday on an October 1978 weekend in appellant's office and found, in addition to the problems that Mr. LaGrone had previously reported, that the monies collected for Services had not been originally deposited to the proper account, but had been placed in accounts belonging to the appellants. Mr. Moss also found a $20,000 difference in the first eight months' report which appellants could not explain. The following morning Umans telephoned Moss and attempted to provide an explanation to the questions left unanswered over the course of the investigation.

At the November 4, 1978 meeting the Board considered the reports of Mr. LaGrone and Mr. Moss and the attempted explanations of the appellants. Included in their considerations was the statement by Moss that Umans may have misappropriated funds.[2] A motion was thereafter made and passed to the effect that appellants had breached their contract by failing to furnish the quarterly reports and the annual report as required by the contract and that accord-

---

2. In connection with the hereinafter discussion of jurisdiction, it should be noted that this meeting was held in Cleveland, Ohio.

ingly, the contract should be terminated. A letter to that effect was sent to the appellants on November 7, 1978.

Pursuant to the terms of the original contract, the Board of Directors elected to enter into an Extension Agreement which required appellants to operate the insurance program for an additional four month period, while they received proposals from other persons to operate the program. This four month period was later extended through June 30, 1979. Appellants agreed to these extensions and operated the insurance business during this period after the termination of the original contract of October 5, 1977.

Upon these facts, Judge John F. McAuliffe, sitting in the Circuit Court for Montgomery County, found that the appellants had breached the contract and that the appellees were not barred by estoppel or waiver from claiming the breach. Appellants allege the trial judge was in error in making both findings. Suffice it to say, we agree with the trial judge's finding that the appellants breached the contract by failing to file proper quarterly reports and failing to furnish the required audit.[3]

We also agree with the trial judge's finding that there was no estoppel or waiver. The appellants argue and we agree that the existence of estoppel or waiver is a question of fact to be decided in each case. *Bargale Industries v. Robert*

---

3. The agreement contained the following:

"15. *Accounting Quarterly.* Administrator shall ensure a quarterly accounting of Services's business, detailing the number of insurance plans, policies or coverage(s) sold to Parents Without Partners, Inc., Regional Councils, Chapters and/or members of same, and monies received as a result of same. Said accounting shall be filed with Services on March 30, June 30, September 30 and December 30.

"16. *Certified Accounting.* Administrator shall annually, on or before February 15 of each year, submit to Services, at its office of record, a certified accounting, including balance sheet and profit and loss statement, detailing all financial transactions which involve, in any way, Services, Parents Without Partners, Inc., Regional Councils, Chapters and/or members, officers and directors of any of the aforesaid. Said accounting shall cover the twelve (12) month period immediately preceeding January 1 of each year. The cost of the certified accounting shall be paid by Administrator, not from Services's funds, except should the cost exceed Two Thousand Dollars ($2,000.00). Any cost in excess of Two Thousand Dollars ($2,000.00) shall be paid by Services from those funds to be retained by Services as set forth in Paragraphs 9, 10, 11 and 12."

*Realty,* 275 Md. 638, 343 A.2d 529 (1975). In the instant case the trial judge found that there was no waiver or estoppel and our review of the record indicates that there was evidence to support these findings. Therefore, we cannot say he was clearly erroneous under Md. Rule 1086.

### *Jurisdiction*

The appellants also sued Paul Moss for defamation and Moss and PWP with intentional interference with contractual relations. The trial judge granted Moss' motion raising preliminary objection on the grounds of lack of jurisdiction over his person. Appellants here allege the trial judge erred. They contend that Moss is liable to suit under three provisions of the Maryland Long Arm Statute, Md. Cts. & Jud. Proc. Code Ann. § 6-103 (b) (1) (3) and (4):

"(b) *In general.* — A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

. . .

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;"

As this Court explained in *McKown v. Criser's Sales & Service,* 48 Md. App. 739, 742, 430 A.2d 91 (1981):

"Application of the long-arm statute involves a two step process. First, it must be determined whether the language of the statute authorizes jurisdiction; second, because the Due Process Clause of the

> Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant, *Kulko v. Superior Court,* 436 U.S. 84, 91, 98 S.Ct. 1690, 56 L.Ed. 2d 132 (1978), it must be determined whether the exercise of jurisdiction, if authorized by the statute, would be consistent with Fourteenth Amendment Due Process. *See, Mohamed v. Michael,* 279 Md. 653, 657, 370 A.2d 551 (1977); *Geelhoed v. Jensen,* 277 Md. 220, 224, 352 A.2d 818 (1976). The two determinations are inter-related 'as it was the intent of the Legislature in enacting the long-arm statute to expand the personal jurisdiction of the courts to the extent permitted by the Fourteenth Amendment,' *Mohamed v. Michael,* 279 Md. at 657, and thus 'the reach of the statute will largely depend upon whether Maryland *in personam* jurisdiction may be asserted under the Fourteenth Amendment.' *Krashes v. White,* 275 Md. 549, 559, 341 A.2d 798 (1975)."

In the instant case all of the facts before the court showed that Moss' only contacts in Maryland were those as a corporate officer. Although the precise point has not been presented to the Maryland courts it appears that such acts do not subject one to personal jurisdiction. The rule seems to be all but universal. *See Quinn v. Bowmar Publishing Co.,* 445 F.Supp. 780, 786 (D. Md. 1978):

> "The Court need not reach the question of whether Campbell's contacts with Maryland are sufficient in number under the statute, since Campbell was acting on corporate business during those meetings. Contacts as a corporate representative on corporate business do not give rise to personal jurisdiction over the individual. *Wilshire Oil Co. of Texas v. Riffe,* 409 F.2d 1277 (10th Cir. 1969); *accord, Lehigh Valley Industries, Inc. v. Birenhaum,* 389 F.Supp. 798 (S.D.N.Y. 1975), *aff'd,* 527 F.2d 87 (2d Cir. 1975)."

*See also, Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed 683 (1977); *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902 (1st Cir. 1980); *Weller v. Cromwell Oil Company,* 504 F.2d 927 (6th Cir. 1974); *Wilshire Oil Company of Texas v. Riffe,* 409 F.2d 1277 (10th Cir. 1969); *Spelling-Goldberg Productions v. Bodek & Rhodes,* 452 F.Supp. 452 (E.D. Pa. 1978); *Quinn v. Bowmar Publishing Company, supra; Idaho Potato Commission v. Washington Potato Commission,* 410 F. Supp. 171 (D. Ida. 1976); *Lehigh Valley Industries, Inc. v. Birenbaum,* 389 F.Supp. 798 (S.D.N.Y. 1975); *But see, Chancellor v. Lawrence,* 501 F.Supp. 997 (N.D. Ill. 1980).

The appellants' reliance on *Topik v. Catalyst Research Corporation,* 339 F.Supp. 1102 (D.C. Md. 1972) is misplaced. Although the Court there held that the fiduciary relationship between shareholders and directors made for an exception to the universal rule, that exception is obviously not involved here. Also not involved here is another exception where the corporation and the individual are virtually one and the same as in *Groom v. Margulies,* 257 Md. 691, 265 A.2d 249 (1970) and *Feldman v. Magnetix Corporation,* 50 Md. App. 308, 437 A.2d 895.

*Judgments affirmed.*
*Appellants to pay the costs.*