Irene ZEMAN

v.

**LOTUS HEART, INC. Deborah Sue Burrows, John M. Burrows.**

**Civ. No. PN–86–3773.**

United States District Court, D. Maryland.

Aug. 8, 1989.

Henry L. Belsky, Michael Marshall, and Schlachman, Belsky & Weiner, Baltimore, Md., for plaintiff.

James W. Constable, Brian S. Goodman, and Wright, Constable & Skeen, Baltimore, Md., Ira M. Siegel, and Blakely, Sokoloff, Taylor & Zafman, Los Angeles, Cal., for defendants.

## MEMORANDUM AND ORDER

NIEMEYER, District Judge.

The pending motion of the defendants Deborah Sue (Suzy) Burrows and John M. Burrows to dismiss this action against them for lack of personal jurisdiction raises the question whether their contacts with Maryland, made solely on behalf of a foreign corporation, subject them to suit in Maryland. They urge that although their contacts have subjected their corporate employer to jurisdiction, they are not subject to jurisdiction because of the "fiduciary shield doctrine."

Plaintiff has sued Lotus Heart, Inc., a California corporation, and the Burrowses

in connection with a licensing agreement reached between the plaintiff and defendant Lotus Heart, Inc. for the manufacture and sale of barrettes with a swiveled hinge, on which the plaintiff has a patent. In counts one and two of the amended complaint, the plaintiff seeks either to rescind the licensing agreement or to recover damages for its breach. In counts three and four the plaintiff sues Suzy and John Burrows as individuals for breach of their fiduciary duties as directors, officers, and controlling stockholders of Lotus Heart, Inc. and for negligence and fraud.

For purposes of negotiating and executing the licensing agreement that is the subject of this action, John and Suzy Burrows, who are citizens of Texas and California, respectively, made various trips to Maryland. Those activities in Maryland, together with other peripheral business conducted by them on behalf of Lotus Heart, Inc. in Maryland, amounted to contacts of sufficient quality and quantity to justify the Court's exercising jurisdiction over Lotus Heart, Inc. These contacts with Maryland have also been alleged to form the basis for the exercise of jurisdiction over the Burrowses. Focusing only on the nature of the contacts under applicable constitution standards as defined in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny, the exercise of personal jurisdiction over the Burrowses would not violate principles of due process. The Burrowses argue, however, that because their presence in Maryland was only on behalf of Lotus Heart, Inc. and because they had no contacts with Maryland other than in connection with the business of Lotus Heart, Inc., the fiduciary shield doctrine should protect them from suit in Maryland. They cite *Cawley v. Bloch,* 544 F.Supp. 133, 136 (D.Md.1982), and *Umans v. PWP Services, Inc.,* 50 Md.App. 414, 420–21, 439 A.2d 21 (1982).

■ According to the fiduciary shield doctrine, which Maryland courts have recognized, *see, e.g., Umans v. PWP Services, Inc., supra,* when a corporate employee has no direct interest in the business that generates his contacts with a state, other than the remote interest derived from serving his employer, the employee may not be subjected to jurisdiction in that state based on those contacts. *See Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 (2d Cir.1981). The fiduciary shield doctrine protects an individual who acts in the forum state solely as the representative of the corporation from suit in that state because he does not personally avail himself of the laws and protection of the forum state in any meaningful way. He is there exclusively in furtherance of the interests of his employer.

■ The Burrowses take no issue with the principle that agents and employees of a corporation may become jointly and severally liable with the corporation for torts committed by them while in the scope of service to the corporation. They contend, however that, while they may be subject to joint and several liability, they may be sued only in a court that has jurisdiction over them in their own right. They argue that their contacts with Maryland do not support the exercise of jurisdiction over them by a Maryland court because they were in Maryland solely on behalf of the business of their corporate employer and not in furtherance of their own interests.

■ Principles of due process limit the assertion of jurisdiction over out-of-state individuals to those individuals who have purposefully availed themselves of the laws and protection of the forum state to such an extent that it would not be unreasonable to assert jurisdiction over them. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The states are free to establish policies for asserting jurisdiction over those who are beyond its borders, subject to this overriding constitutional limitation. Maryland's Long Arm Statute, Courts & Jud. Proc. Art., § 6–101 et seq., Md.Code, in part extends jurisdiction to the greatest extent permitted by the Due Process Clause, and in part imposes requirements for jurisdiction that are stricter than the broadest limits of the Due Process Clause. It has been noted that § 6–103(b)(1), which

permits jurisdiction over persons with respect to claims arising from any business transacted or work or service performed in the state, takes advantage of the Due Process Clause to the fullest extent. *See Craig v. General Financial Corp.*, 504 F.Supp. 1033, 1038 (D.Md.1980). On the other hand §§ 6–103(b)(3) and (b)(4), which permit jurisdiction over persons who commit torts in the state by either acts in the state or, in certain circumstances, acts outside the state, have been found to impose restrictions greater than those imposed by the Due Process Clause. *See Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F.Supp. 312, 318 (D.Md.1983).

The fiduciary shield doctrine provides an equitable restriction on the assertion of jurisdiction. The restriction derives from the interpretation of state long arm statutes—it is not a constitutional limitation. When a long arm statute purports to take full advantage of permissible rights under the Constitution, the analysis must be made under the applicable constitutional principles. *See Columbia Briargate Co. v. First National Bank in Dallas*, 713 F.2d 1052, 1057–58 (4th Cir.1983); *cert. denied sub nom. Pearson v. Columbia Briargate Co.*, 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984). Some jurisdictions have concluded that an employee who engages with the forum state solely on behalf of his employer does not purposefully avail himself of the laws and protection of the state to an extent such that the assertion of jurisdiction over the employee satisfies due process scrutiny. The Fourth Circuit, however, has rejected this argument in *Columbia Briargate*. Indeed, when a review of the long line of Supreme Court cases that addresses the subject is conducted, one finds that the distinction between an employee's conduct pursued solely on behalf of his corporation and his conduct as it might benefit himself individually is not accommodated by constitutional principles. On the contrary, the notion of joint and several liability of employer and employee could well put the employee on notice that his tortious conduct within a state on behalf of his employer *might* subject him not only to suit but to suit in that state where

he causes the tort. Accordingly, the fiduciary shield doctrine is to be considered only insofar as the applicable provision of the Long Arm Statute does not reach to the limits of due process.

In this case the plaintiffs seek to assert jurisdiction over the Burrowses under § 6–103(b)(1), (b)(3) and (b)(4) of Maryland's Long Arm Statute. Because section (b)(1) purports to authorize jurisdiction to the peripheral limits of due process, the statute will not be restricted by the fiduciary shield doctrine. The Court therefore concludes that on this ground alone the motion to dismiss should be denied.

The justification of jurisdiction under §§ (b)(3) and (b)(4) does permit the fiduciary shield doctrine to come into play, because those sections are not interpreted to the full extent allowed by the Constitution. As a secondary analysis, therefore, the Court will consider the applicability of the doctrine to this case before it.

The Second Circuit in *Marine Midland Bank, N.A. v. Miller, supra,* described the doctrine as an equitable one that should be applied to the circumstances of each case:

> As an equitable principle, the fiduciary shield doctrine is not applied mechanically; the determination of the appropriateness of its application requires an analysis of the particular facts of the case. In each instance, fairness is the ultimate test. Its applicability depends generally on the employee's faithful pursuit of the corporation's interest rather than his own interest. Thus, when a corporate employee acts in his own personal interest rather than in the best interest of his corporation, he is not protected by the fiduciary shield since it is equitable that his self-interested actions be considered his own and be treated as a predicate for the exercise of jurisdiction over him personally.

664 F.2d at 903.

Therefore, when (1) an employee has pursued conduct in a state solely at the direction of the corporation in furtherance of the corporation's interest; (2) he has not pursued a personal interest in the state

that was direct and substantial; and (3) he has not diverted significantly from the corporate purpose and policies while in the state, his contact with the state should not subject him to the jurisdiction of a court in the state under statutory provisions that are narrower than the full breadth of due process. On the other hand, if the employee has derived a direct and substantial financial benefit from the business he conducts in the state or if an employee diverted, even unintentionally, from the purpose or policies of his employer to the extent that it can be said that his conduct was independent, then he may not avail himself of the protection of the fiduciary shield doctrine.

■ It is not necessary under the proper analysis to pierce the corporate veil to reach the conclusion that an employee has a direct financial interest in the business of his corporation. An employee may have a sufficient financial stake in the business conducted in the state by way of commissions, dividends or other compensation directly related to the business if the extent of the employee's financial stake is such that it would be unfair to permit the employee to interpose the protection of the fiduciary shield doctrine. The same could be true where principals of a corporation voluntarily enter the state to transact business primarily for their personal benefit, albeit through a corporate form. The analysis must measure the extent of the individual interest of the employee in the business that is connected to the state. The greater the personal interest of the employee in the business giving rise to the contact that he has with the state, the less likely it will be that he can invoke the protection of the fiduciary shield doctrine for purposes of personal jurisdiction.

■ The interest that the individual has in the contact with the state may also be measured by determining how distinct it is from the corporate interest. Thus, when the conduct of an employee who enters a state on corporate business so deviates from the corporate purpose or policies that his conduct becomes his own, he will lose protection of the shield by reason of that conduct.

■ The evidence in this case presented by affidavit supports the contention of the Burrowses that their presence in Maryland was almost entirely in connection with the development of the business of Lotus Heart, Inc. Although there were discussions in 1985 between plaintiff and the Burrowses before incorporation of Lotus Heart, Inc., the substantial contacts with Maryland were in the spring of 1986, after incorporation, when the Burrowses came to Maryland to negotiate and execute the license agreement on behalf of the corporation and when they visited other firms to promote and establish the business of the corporation.

The question remains whether the Burrowses availed themselves of the privilege of conducting *personal* business in Maryland to such extent that it would not be unreasonable to require them to answer to a suit arising out of their contacts. The personal financial interest that the Burrowses had in the business of the corporation that was being transacted is therefore a relevant concern.

Lotus Heart, Inc. is a closely held California corporation, the stock of which originally was owned equally by John Burrows, Suzy Burrows, and two others. Both John and Suzy Burrows were directors and were its president and vice president, respectively. The capital and financing were provided by John Burrows, and he subsequently purchased all of the stock of one of the other stockholders. As part of the arrangement by which plaintiff licensed Lotus Heart, Inc. to use her invention for the swiveled barrettes, plaintiff received 15% of the stock of Lotus Heart, Inc. Following the issuance of that stock, John's interest in the corporation was 42.5% and Suzy's was 21.25%.

While plaintiff contends that the corporate form should be ignored because Lotus Heart, Inc. was so closely held, the record does not support a finding of circumstances necessary to ignore the corporate form. *See Bart Arconti & Sons v. Ames–Ennis,* 275 Md. 295, 310, 340 A.2d 225 (1975). Nevertheless, John and Suzy Burrows did constitute half the stockholders and all the officers of the corporation, and controlled

over 60% of the stock. John Burrows had invested all the capital. The personal benefit plaintiff would receive from the business conducted in Maryland was in direct proportion to the extent of the success of that business. It would violate a sense of fairness to permit the Burrowses to solicit, negotiate, and consummate corporate business in Maryland in which they personally had so direct and substantial an interest and then allow them to avoid responding in Maryland to legal charges addressed to them personally, which arise from those transactions. Applying the principles described in this opinion, the Court therefore concludes that under the circumstances of the instant case the fiduciary shield doctrine should not avail to protect the Burrowses from suit in Maryland, even if jurisdiction is based only on §§ 6–103(b)(3) and (b)(4).

Accordingly, for the reasons given, it is hereby ORDERED this 8th day of August, 1989, that:

1. The motion of John and Suzy Burrows to dismiss the Amended Complaint against them for lack of personal jurisdiction is denied;

2. This action shall proceed to trial as previously scheduled on November 13, 1989; and