**Elaine JOHNS, et al., Plaintiffs,**

v.

**A. Bruce ROZET, et al., Defendants.**

**Civ. A. No. 91–130 (CRR).**

United States District Court,
District of Columbia.

July 15, 1991.

justify amendment of the Complaint at this stage of the litigation.

Barbara Kaye Dougherty of Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for plaintiffs.

Judith Bartnoff of Patton, Boggs & Blow, Washington, D.C., for defendants.

## OPINION

CHARLES R. RICHEY, District Judge.

Before the Court is the defendants' Motion to Dismiss based on the *Colorado River* doctrine, issue preclusion, and lack of personal jurisdiction. After careful consideration of the defendants' motion, the opposition thereto, the underlying law, and the entire record herein, the Court shall deny the defendants' Motion to Dismiss.

## I. BACKGROUND

This case has a tortuous history. A related case was filed in March 1987 in the District of Columbia Superior Court. The plaintiffs, low-income tenants in a housing project, the Tyler House, sought redress from their landlords and its management company for allegedly substandard and unhabitable living conditions. Trial was eventually set for June 26, 1989. On the eve of trial, the three owner defendants filed for bankruptcy in California. Plaintiffs were then granted leave to file a second amended complaint naming two affiliates of the bankrupt owner defendants—the National Investment Development Corporation ("NIDC") and Housing Resources Management, Inc. ("HRM"). Trial was rescheduled for September 12, 1990. In March 1990, the plaintiffs were denied leave to file a third amended complaint adding an additional defendant, the Associated Financial Corporation ("AFC"), a corporate affiliate of NIDC and HRM. One week before trial was to begin, NIDC filed for bankruptcy in California. The next day, defendant Moses removed the case to federal court and moved to transfer venue to California. Judge Jackson remanded the case back to Superior Court and held in abeyance a ruling on the issue of sanctions against the defendant pending completion of the trial.

On HRM's representations of imminent bankruptcy, the Superior Court again continued the case. By Order of October 3, 1990, denying HRM's motion to reopen discovery on class certification, the court stated:

> The Court previously advised HRM's counsel in a conference call ... that the coupling of HRM's settlement offer with its threat of bankruptcy raised questions about the good faith of both of these representations.... In short, HRM does not come to this motion with clean hands; under all circumstances, its protestations of concern about the tenant class do not gibe with its continuing actions, which effectively are denying those tenants their day in court.

The plaintiffs allegedly discovered who had been the true owners of the Tyler House since 1986, and on October 1, 1990, plaintiffs moved to amend their Superior Court complaint to add Mr. Rozet, Mr. Ross, and AFC—the defendants now before this Court. Judge Taylor denied plaintiffs the opportunity to amend their complaint, in part because she feared it would delay the trial, require reopening discovery, and disrupt intensive mediation.[1]

The plaintiffs then turned to this Court to proceed against Ross, Rozet and AFC. The plaintiffs allege that Ross, Rozet and AFC are the true owners of Tyler House through a web of shell corporations designed solely to insulate the defendants from accountability to their tenants. The plaintiffs claim that the defendants breach-

---

1. *See Elaine Johns et al. v. Tyler House Apartments, Ltd.,* et al., No. CA–660'88, Order at 2–3 (D.C.Super.Ct. Apr. 9, 1990). After half a dozen bankruptcy proceedings, the Superior Court case has been stayed as to all defendants but Beltway, which was involved in the management of Tyler House up to 1987. The case before this federal Court involves Ross, Rozet and AFC, who cannot be added as defendants to the Superior Court case. *See discussion, infra,* pp. 15–16.

ed the warranty of habitability, were negligent in their operation of Tyler House, and fraudulently promised to repair and maintain the building.

## II. ANALYSIS

Because the defendants here are not parties in the Superior Court case,[2] and the claims against the defendants, including the fraud count, are unique to this action, and because the damages claimed in the two cases cover different time periods, these cases are not parallel actions subject to dismissal under the *Colorado River* doctrine. Moreover, neither issue preclusion nor lack of personal jurisdiction bar this action.

### A. *The Colorado River Doctrine*

■ In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court articulated what is essentially a type of judicial abstention designed to avoid duplicative litigation.[3] The *Colorado River* doctrine provides that under special circumstances a federal court may decline to exercise its jurisdiction on the ground that there is a parallel action pending in state court which can resolve the controversy. *Id.* at 818, 96 S.Ct. at 1246. Arguing that this action and the Superior Court action are essentially the same, the defendants ask the Court to dismiss this case based on *Colorado River* "abstention." Because the Court finds that the defendants interpret *Colorado River* too broadly, and in the interests of justice, the Court shall deny the defendants' request.

*Colorado River* abstention rests on "considerations of '[w]ise judicial administration, ... conservation of judicial resources and comprehensive disposition of litigation'" *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). However, *Colorado River* did not

enervate "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. The general rule remains that "'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction ...'" *Id.* (quoting *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910)). Given this principle, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise administration are considerably more limited than the circumstances appropriate for abstention" and, indeed, are "exceptional." *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246.

■ The *Colorado River* doctrine rests on a number of considerations, including the desirability of avoiding piecemeal litigation, the inconvenience of the federal forum, whether the state court has assumed jurisdiction over a *res*, the order in which jurisdiction was obtained by the concurrent forums. *See id.* In addition, the court may consider the "probable inadequacy of the state court proceeding" to protect the plaintiffs' rights, the relative progress of the litigation in the courts, whether federal law is involved, and the vexatious nature of the litigation. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26, 21, 23, 17 n. 20, 103 S.Ct. 927, 942, 939, 941, 937 n. 20, 74 L.Ed.2d 765 (1983). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. Only the clearest of justifications will warrant dismissal." *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. at 1247.

Here, a number of factors counsel for the exercise of jurisdiction. In this case, the Court is not deeply concerned about avoiding piecemeal litigation. The most im-

---

**2.** Indeed, the law of the case prevents these defendants from being added to the Superior Court case.

**3.** *See* 17A C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure § 4247 at 116 (2d ed. 1988).

portant factor in *Colorado River*—a statute providing state court jurisdiction and evincing a clear federal policy of avoiding piecemeal litigation—is absent in this case. As the United States Court of Appeals for the District of Columbia has stated:

> [Avoidance of piecemeal litigation] assumed importance in *Colorado River* because the litigation there involved a federal statute under which Congress had explicitly recognized the availability of state systems for the adjudication of water rights and had expressed a strong policy favoring resolution of those rights in a single, comprehensive forum.... No such policy is implicated in the case at bar, and the mere desire to resolve all issues involving related facts in one court does not justify depriving [the plaintiff] of his federal forum.

*Hoai v. Sun Refining and Marketing Co.*, 866 F.2d 1515, 1520 (D.C.Cir.1989). In analyzing the problem of piecemeal litigation, "the district court must look beyond the routine inefficiency that is the inevitable result of parallel proceedings to determine whether there is some exceptional basis for requiring the case to proceed entirely in [state] court." *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 16 (1st Cir.1990); *see Mahaffey v. Bechtel Associates Professional Corp.*, 699 F.2d 545 (D.C.Cir.1983) (where plaintiffs filed, in Superior and federal courts, two virtually identical actions, based on same accident, naming same defendants, and presenting no federal question, case nonetheless did not fall within narrow *Colorado River* doctrine, and dismissal of federal action was an abuse of discretion).

This case also is not closely parallel with the Superior Court case. The Superior Court judge, in her discretion, denied plaintiffs the opportunity to amend their complaint to add these defendants after the case had been pending for about three years, discovery had been completed and the case was almost ripe for trial. Moreover, the plaintiffs' complaint in this case contains a fraud count not in the Superior Court case. Because the parties and claims here are not coextensive with the Superior Court case, the Court does not find the case so parallel as to warrant abstention. *See Republicbank Dallas, Nat'l Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir.1987) (parallel actions involve "the same parties and issues") (citations omitted); *Nacol v. Keith Wood Agency, Inc.*, 750 F.Supp. 1128, 1130 (M.D.Fla.1990) (denying motion to stay and noting that "[t]he federal case contains broader allegations," and "at this point in time, the parties are not the same, ... and [t]his court is unwilling to assume the [state] court will allow intervention"). As stated in *Crawley v. Hamilton County Comrs.*:

> While it may be true ... that [the state case] *could* be modified so as to make it identical to the current federal claim, that is not the issue here. The issue is whether [the state case] as it *currently* exists, *is* a parallel state-court proceeding. Because it is not, we need not undertake the five factor analysis called for in *Moses H. Cone Memorial Hospital*.

744 F.2d 28, 31 (6th Cir.1984).

In addition, this court is as convenient as the Superior Court. Moreover, unlike *Colorado River*, this case does not involve the *in rem* jurisdiction of the state court. The absence of these factors speaks against abstention. *Nacol*, 750 F.Supp. at 1130. As to the relative progress of the state and federal proceedings, although the Superior Court case has been pending for several years, there has been no discovery as to these defendants as a result of Judge Taylor's denial of the plaintiffs' motion to amend their complaint, and this Court really is the first court to acquire jurisdiction over these defendants and the new fraud claim.

More importantly, the Superior Court cannot adjudicate all of the claims against all of the parties alleged to have wronged the plaintiffs in this case. As a result of Judge Taylor's ruling, the defendants here cannot be added to the Superior Court case and not all of the plaintiffs' claims—especially the fraud claim—will be addressed by the Superior Court. Fundamental fairness and the inadequacy of the Superior Court action to address all of the plaintiffs' claims weigh heavily against the applica-

tion of the *Colorado River* doctrine to this case. As the Supreme Court counseled in *Moses H. Cone Memorial Hospital:*

> When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.

460 U.S. at 28, 103 S.Ct. at 943.

Although only state law will govern all of the claims in this lawsuit, the Court does not weigh that factor heavily against the exercise of its diversity jurisdiction. *See American Bankers Ins. Co. v. First State Ins. Co.,* 891 F.2d 882, 886 (11th Cir.1990) ("Only in 'rare circumstances' will the presence of state law weigh in favor of dismissal") (quoting *Moses H. Cone*, 460 U.S. at 25–26, 103 S.Ct. at 941–42). As the district court stated in *Barron v. Spectrum Emergency Care, Inc.:*

> [T]he court cannot abstain simply because state law is controlling ... [W]here, as here, state law issues predominate, the source-of-law factor is of diminished importance. A contrary view would mean that abstention would be the rule rather than the exception in duplicative federal actions brought under diversity jurisdiction.

619 F.Supp. 1011, 1015 (D.C.Ga.1985). Nor is the Court convinced that this case involves complex state law questions. This case appears to allege an ordinary dispute over negligence, breach of warranty, fraud and piercing the corporate veil. *See American Bankers Ins.*, 891 F.2d at 886 (absence of complex state law question that would best be resolved by the state court weighs against dismissal); *c.f. Park v. Didden*, 695 F.2d 626, 633 n. 18 (D.C.Cir.1982) (noting that a federal court is not "permitted to reject a diversity jurisdiction case on the ground that garden variety issues governed by state law, for example, disputes between landlords and tenants, are more appropriately decided in state courts").

Finally, concerning the vexatious nature of the federal or state litigation, the Court is not convinced that the plaintiffs conduct has been reproachful. Indeed, it appears that the plaintiffs may have been deprived of their day in court by a series of delay tactics and eleventh hour bankruptcy filings. If further development of the record reveals misconduct by either side, the Court will be prepared take appropriate action. *See, e.g.,* Fed.R.Civ.P. 11.

## B. *Issue Preclusion*

■ The defendants also argue that issue preclusion bars the Court from hearing this case due to the denial of plaintiffs' motion to amend their complaint to add the defendants in the Superior Court case. The defendants' argument fails because the issues involved in the Superior Court case and here are different. The "fundamental requisite of issue preclusion is an identity of the issue decided in the earlier action." *Clark–Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, 1079 (D.C.Cir.1987), *cert. denied*, 485 U.S. 913, 108 S.Ct. 1088, 99 L.Ed.2d 247 (1988).[4]

The issue before Judge Taylor on the plaintiffs' motion to amend complaint was whether, given the posture of the case, the Superior Court should exercise its discretion and allow the plaintiffs to bring additional defendants into a suit that had been pending for about three years. Judge Taylor's ruling was purely procedural, and was based on factors such as the undesirability of reopening discovery, jeopardizing the trial date, and disrupting intensive mediation. The concern about the timeliness and desirability of adding the defendants to the Superior Court case differs from the issues before this Court, such as whether the court can properly exercise its jurisdiction and whether the plaintiffs are time-barred by the statute of limitations.

---

**4.** *C.f.* 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4440 at 365 (2d ed. 1988) (noting even that in the case of penalty dismissals, "[o]f itself, the dismissal does not actually adjudicate any issues and does not support issue preclusion"); *Wood v. Several Unknown Metro. Police Officers*, 835 F.2d 340, 344 (D.C.Cir.1987).

## C. *Personal Jurisdiction*

The Court also rejects that defendants' argument that the Court lacks personal jurisdiction over them. A court sitting in diversity jurisdiction must apply the law of the forum to determine whether it may exercise personal jurisdiction over the defendants. *See Koteen v. Bermuda Cablevision, Ltd.,* 913 F.2d 973, 974 (D.C.Cir. 1990); *Crane v. Carr,* 814 F.2d 758, 762 (D.C.Cir.1987). The District of Columbia long-arm statute provides that a corporation or individual "transacting any business in the District of Columbia" or "causing tortious injury in the District of Columbia" is subject to the personal jurisdiction of a court there. D.C.Code Ann. § 13-423(a). This provision reaches to the limits of the Due Process clause. *Koteen,* 913 F.2d at 974; *Hummel v. Koehler,* 458 A.2d 1187, 1190 (D.C.1983); *Mouzavires v. Baxter,* 434 A.2d 988, 992 (D.C.1981) (en banc), *cert. denied,* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982).

■ Under the Due Process clause, a court may assert jurisdiction over a defendant who "purposely established 'minimum contacts' in the forum state," *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985), where these contacts have a basis in " 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Id.* at 475, 105 S.Ct. at 2183 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). The defendant's conduct and connection to the forum State must be such that " 'he could reasonably anticipate being haled into court there.' " *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *World-Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980)). The defendant need not ever be physically present in the forum jurisdiction, and even a single transaction may give rise to personal jurisdiction where the cause of action arises from that transaction. *Reiman v. First Union Equity & Mortgage,* 614 F.Supp. 255 (D.D.C.1985).

■ At the preliminary stages of a case on a motion to dismiss, factual disputes concerning jurisdiction are resolved in favor of the plaintiffs. *Crane v. New York Zoological Soc.,* 894 F.2d 454, 456 (D.C.Cir. 1990); *Chase v. Pan-Pacific Broadcasting, Inc.,* 617 F.Supp. 1414, 1215 n. 1 (D.D.C.1985); 2A J. Moore and J. Lucas, *Federal Practice* ¶ 12.07[2.2] at 12-56 (plaintiffs' jurisdictional allegations are presumed true, and factual disputes are resolved in plaintiff's favor). The "plaintiffs need only make a *prima facie* showing that jurisdiction is conferred by the state long-arm statute, and any pleadings and affidavits should be strongly construed against the moving party." *Law Offices of Jerris Leonard v. Mideast Sys., Ltd.,* 630 F.Supp. 1311, 1313 (D.D.C.1986). These principles bear strongly on the instant motion because the jurisdictional allegations are intertwined with the underlying merits of the case.

■ The plaintiffs' allegations are sufficient to establish the minimum contacts necessary for this Court to assert jurisdiction over the defendants. The plaintiffs have alleged that the defendants owned and controlled property in the District of Columbia and that plaintiffs' claims arise from that ownership. The plaintiffs allege, *inter alia,* the following. The defendants controlled Tyler House and other housing projects to profit from the syndication and sale of tax benefits associated with their rehabilitation. Complaint ¶¶ 20-22. The defendants were named insureds on Tyler House's insurance policies and exercised control over Tyler House for three years through a series of shell corporations lacking any function, assets or identity separate from defendants. *Id.* ¶ 23. AFC directly negotiated with the Department of Housing and Urban Development ("HUD") concerning proposed rehabilitation plans for Tyler House. *Id.* ¶ 23(c)(2). AFC paid over $200,000 in legal fees on behalf of various defendants in the Superior Court action brought by tenants of Tyler House, *id.* ¶ 23(c)(3), and provided financial support

to Tyler House, including the funding of certain operating deficits and mortgage payments. *Id.* ¶ 23(c)(4). Mr. Ross, Mr. Rozet and/or AFC provided direct consultation and direction for several of the Superior Court defendants to file for bankruptcy, allegedly to escape sanctions for violation of the Superior Court consent decree requiring them to maintain Tyler House in a safe and habitable condition. *Id.* ¶ 23(c)(5). AFC representatives, including Mr. Rozet, met with Tyler House tenants as their landlord to encourage settlement of the Superior Court lawsuit, *id.* ¶ 23(c)(6), and the funds for the settlement came directly from the defendants. *Id.* ¶ 23(c)(7). The defendants hired and directed the on-site management of Tyler House in early 1987. *Id.* ¶ 23(c)(8).

Because the subject matter of this suit arises from property owned or controlled by the defendants, the minimum contacts standard required by the Due Process clause is satisfied. *See Shaffer v. Heitner,* 433 U.S. 186, 207–08, 97 S.Ct. 2569, 2581–82, 53 L.Ed.2d 683 (1977); *International Shoe v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945).

Defendants Ross and Rozet further argue that they should not be individually subject to suit in the District of Columbia because their acts were performed on behalf of Partnership Investor Services, Inc. ("PISI"), a wholly owned subsidiary of NIDC, which was in the business of acquiring, selling, owning, operating and managing federally subsidized housing projects such as Tyler House. However, the "corporate shield" or "fiduciary shield" doctrine upon which the defendants depend is an equitable restriction on the assertion of personal jurisdiction. *American Directory Service Agency v. Beam,* 131 F.R.D. 635, 641 (D.D.C.1990). The application of the doctrine depends on whether it will promote fairness to allow an individual to invoke its protection. *Id.* (citing *Marine Midland Bank v. Miller,* 664 F.2d 899, 902 (2d Cir.1981)). The doctrine does not apply when the corporation has filed for bankruptcy, the corporation and individual are alleged alter egos, the agent derives a substantial benefit from the business he conducts in the state, or the corporation lacks sufficient assets to respond. *See American Directory,* 131 F.R.D. at 643 (corporation's filing for bankruptcy tipped the balance in favor of exercising jurisdiction over the individual defendant); *Chase v. Pan Pacific Broadcasting, Inc.,* 617 F.Supp. 1414, 1423 (D.D.C.1985) (fiduciary shield does not apply to motions to dismiss; defense that individual is "not liable because he was acting for a disclosed corporate principal goes to the *merits* of the case, not to the *power* of the court to make the adjudication"); *Zeman v. Lotus Heart, Inc.,* 717 F.Supp. 373, 378 (D.Md.1989) (courts can exercise jurisdiction over principals who voluntarily enter the forum to transact business primarily for their personal benefit, albeit through a corporate form); *Marine Midland,* 664 F.2d at 903 (equity supports asserting jurisdiction over the individual when the corporation has insufficient assets to respond or is a mere corporate shell).

Here, the plaintiffs allege *all* of these factors. Among other things, the plaintiffs make the following allegations. PISI was grossly undercapitalized, lacked the financial ability to fulfill its obligations to the Tyler House tenants, and filed for bankruptcy. Complaint ¶ 25(a), 25(b), 29. NIDC, which was the parent of PISI and which *de facto* had controlled Tyler House before its acquisition by Rozet and Ross, ceased to have any independent function after the acquisition. *Id.* ¶ 25(c), 26. Mr. Rozet was PISI's Chief Executive Officer and a member of PISI's Board of Directors from December 15, 1987 to May 5, 1989. *Id.* ¶ 25(d). Mr. Ross was PISI's Executive Vice President and a member of its Board of Directors from December 15, 1987 to May 5, 1989. *Id.* ¶ 25(e). At all relevant times, Rozet and Ross made the critical operational and strategic decisions on behalf of PISI, including the decision to place PISI in bankruptcy in May 1989 to avoid contempt sanctions for PISI's failure to comply with the Superior Court consent decree. *Id.* ¶ 25(f). PISI, Rozet and Ross had the same business address and office. *Id.* ¶ 25(g). Because the plaintiffs' allega-

tions indicate the absence of a separate corporate entity, and in the interests of fundamental fairness, the Court will not apply the fiduciary shield doctrine to prevent the exercise of jurisdiction over the defendants.

 Finally, the defendants contend that, based on their negotiations and transactions with HUD, the "government contacts" doctrine prevents this Court from exercising jurisdiction over them. The Court rejects the defendants' broad interpretation of the doctrine. The government contacts exception to the District of Columbia's long-arm statute apparently is based on the First Amendment, and the purpose of the doctrine is to facilitate access to the federal government. *See Rose v. Silver*, 394 A.2d 1368, 1374 (D.C.1978) ("the First Amendment provides the only principled basis for exempting a foreign defendant from suit in the District of Columbia, when its contacts are ... sufficient to withstand a traditional due process attack"). The exception is available only to parties whose sole contact with the District of Columbia arose out of dealing with a federal instrumentality on a subject unique to the government. *Chase*, 617 F.Supp. at 1426–27 (and cases cited therein). Any additional contacts with the District of Columbia, including hiring an attorney in the District of Columbia in connection with these activities, can defeat the use of this exception. *Id.* Here, the government contacts exception does not apply because the defendants allegedly own property in the District of Columbia, conducted discussions with HUD regarding the rehabilitation of the property, which is not a uniquely governmental function, and the defendants retained counsel in this jurisdiction for more than merely facilitating governmental action. *Id.; Rose*, 394 A.2d at 1371–74.

## III. CONCLUSION

For all of the foregoing reasons, the Court shall deny the defendants' Motion to Dismiss based on the *Colorado River* doctrine, issue preclusion, and lack of personal jurisdiction. The Court shall issue an Order of even date herewith in accordance with this Opinion.

### ORDER

In accordance with the Court's Opinion issued of even date herewith, the Court shall deny the defendants' Motion to Dismiss. This case will be put on a fast track, and within ten (10) days hereof, plaintiffs' counsel are directed to confer with defense counsel and to advise the Court through a joint memorandum and order as to an appropriate discovery schedule regarding class certification and the merits. The parties thereafter will be asked to consult with each other and then with the Court regarding a pretrial and trial date to be set shortly thereafter. The Court desires to resolve this case by the end of the current calendar year.

Accordingly, it is, by the Court, this 14th day of July, 1991,

ORDERED that the Motion to Dismiss filed by the defendants shall be, and hereby is denied; and it is

FURTHER ORDERED that the stay of proceedings shall be, and hereby is, vacated; and it is

FURTHER ORDERED that within ten (10) days of the date of this Order, counsel for both sides shall confer and submit to the Court a joint memorandum and order regarding an appropriate discovery schedule on class certification and the merits.